UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT D. KORNAGAY,

     Plaintiff,

v.                                                          Case No.:  2:24-cv-980-SPC-NPM

R. TABIL *et al.*,

     Defendants.

_____/

## OPINION AND ORDER

Before the Court are defendants' R. Zabala and G. Noe's Motion to Dismiss Complaint (Doc. 40), defendants Rami Tabil, Stephen Gahrmann, Jacob Dawson, Edgardo Cadiz-Baez, Albert Scarpati, and Derek Snider's Motion to Dismiss Plaintiff's Complaint (Doc. 49), and plaintiff Robert Kornagay's responses (Docs. 47 and 55).

## Background

Kornagay is a prisoner of the Florida Department of Corrections (FDOC). He sues eight officials at Charlote Correctional Institution—the warden, and assistant warden, four prison guards, and two medical providers—under 42 U.S.C. § 1983 for retaliation, deliberate indifference, and conspiracy to violate

civil rights.[1] The Court recounts the factual background as pled in Kornagay's complaint, which it must take as true to decide whether the complaint states a plausible claim. *See Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

On December 1, 2021, Tabil found papers showing that Kornagay settled a lawsuit against other FDOC officers. On December 18, 2021, Tabil told Kornagay, "You are in $70,000 worth of debt, thanks to your little lawsuit, you fuck with one of us, and we'll collect every dime back even if it's collected in blood." (Doc. 1 at 9). Kornagay submitted a grievance requesting protection from Tabil, and it was accepted for investigation. On December 31, 2021, Tabil told the other prisoners in close management that Kornagay was a snitch and blamed him for confiscation of contraband. Kornagay filed another grievance seeking protection from Tabil, and it was also accepted for investigation. He filed a third grievance on January 25, 2022, because he still did not feel safe.

On January 28, 2022, Kornagay told Scarpati and Gahrmann that Tabil labeled him as a snitch and requested protection. Scarpati threatened "to have an all-out bulletin" put on Kornagay if he mentioned Tabil in another grievance. (*Id.* at 11). Scarpati and Gahrmann did nothing to protect

---

[1] The Court dismissed Kornagay's claims against two other FDOC officials in a prior order. (*See* Doc. 15). Defendant Shawn Corfee remains unserved despite efforts by the U.S. Marshal Service.

Kornagay from Tabil or the inmates who believed he was a snitch. The next day, Kornagay filed an emergency grievance with the FDOC secretary, seeking immediate protection. A representative of the secretary determined the grievance was not an emergency and forwarded it to Warden Snider. On March 8, 2022, Kornagay requested immediate protection from Snider and Assistant Warden Dawson. They assured Kornagay they had read the grievances and said he would need to wait on the outcome of the investigation.

On September 22, 2022, Tabil tried to force Kornagay to renounce his prior grievances, but Kornagay refused. Tabil said there were other "pen-pushers" before Kornagay and, "we broke all of them. We beat one so bad, he can't remember his own name. And we made one look like a suicide. You just don't know how easy this shit is." (*Id.* at 15).

On June 18, 2023, Tabil accused Kornagay of helping his cellmate file a lawsuit and said, "You was able to duck the last bullet because you went back to CM1 for your little hostage game, but you're back on CM2 and it don't look like your little grievances crying for protection was enough to fight the power…Fuck your grievances, enjoy the cake we baked" (*Id.* at 15). Later that day, an unknown inmate attacked Kornagay in the dayroom. Coreff and Cadiz-Baez disregarded FDOC policy by allowing the inmate to visit his cell and return to the dayroom without being searched. The inmate escaped from his cuffs with a homemade key and used a shank to stab Kornagay three times in

3

the neck and upper back.  Coreff and Cadiz-Baez failed to intervene, but another inmate stepped in and stopped the attack.

Kornagay was seen by medical staff at about 8:30 p.m., and he complained of pain, numbness and tingling in his right arm, dehydration, and dizziness.  Nurse Zabala could not stop the bleeding and called Medical Director Noe.  Zabala wanted to send Kornagay to a hospital, but Noe declined the request.  He explained it was best for Kornagay to move as little as possible to avoid further neck injury and slow the loss of blood until Noe could treat him the next morning.  Officer Gahrmann was in the triage room, and he said, "We just had two inmates come back from the hospital today, and we don't have the time or staff to send anyone else out." (*Id.* at 17).  Medical staff cleaned and bandaged Kornagay's wounds, gave him water, and instructed him to avoid movement.

Tabil delivered Kornagay's personal property around 9:20 p.m.  He told Kornagay, "The only reason you escaped is because that little wet-back friend of yours got in our business, but I guarantee that the next shot we send is going to fuck you up for life." (*Id.* at 18).

At about 5:30 the next morning, Kornagay lost consciousness.  Officers took him to the medical building, and Noe saw him at about 8:20 a.m.  Noe gave Kornagay lidocaine injections, used sutures to close his wounds, and prescribed a 90-day supply of Tylenol.  The lidocaine wore off two days later,

4

and Kornagay began experiencing pain in his neck and back and migraine headaches.  When Kornagay got his sutures removed on June 26, 2023, he complained the Tylenol was ineffective.  Noe gave him three two-packs of acetaminophen but refused Kornagay's request for more pills and a higher dose.  Kornagay continued to experience pain and headaches.  Noe and a nurse practitioner examined him on July 17, 2023, and prescribed additional oral and topical pain medications.

On October 17, 2023, an orthopedist recommended more pain medication and physical therapy.  Kornagay received a supply of ibuprofen days later, and on November 1, 2023, he was transferred to another facility for physical therapy.

## Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and view them in a light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation.  The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing

party is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

## Discussion

Kornagay asserts a First Amendment retaliation claim against Tabil, Eight Amendment claims against all defendants, and a § 1983 conspiracy claim against Noe, Zabala, and Gahrmann. The medical defendants—Zabala and Noe—argue Kornagay failed to state a claim against them. The FDOC defendants—Tabil, Gahrmann, Dawson, Cadiz-Baez, Scarpati, and Snider—also attack the sufficiency of Kornagay's complaint, they argue he failed to

exhaust administrative remedies, and they raise the defense of qualified immunity.

## A.    Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), before a prisoner may bring a claim challenging the conditions of his confinement, he must exhaust available administrative remedies. 42 U.S.C. § 1997e.   The purpose of administrative exhaustion "is to put the administrative authority on notice of all issues in contention and to allow the authority an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (cleaned up).

The Eleventh Circuit has established a two-step process for deciding a motion to dismiss for failure to exhaust administrative remedies:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed…
>
> If the complaint is not subject to dismissal at the first step, where plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Turner v. Burnside*, 541 F.3d 1077, 1082-83 (11th Cir. 2008).

7

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). The Florida legislature delegated the establishment of administrative remedies for aggrieved inmates and the rules governing them to the FDOC. *Chandler*, 379 F.3d at 1287. The FDOC created a three-step grievance process. To exhaust it, a prisoner must (1) file an informal grievance to the responsible staff member; (2) file a formal grievance with the warden's office; and (3) appeal the formal grievance to the secretary of the FDOC. *Id.* at 1288.

There are no factual disputes regarding exhaustion here. Kornagay took at least 19 grievances to the third level of review during the relevant time period—December 1, 2021, to December 31, 2023. Other grievances were approved, so he was not required to proceed to the next stage of the grievance process. *See Williams v. Dep't of Corr.*, 678 F. App'x 877, 881 (11th Cir. 2017). Some of Kornagay's grievances address incidents unrelated to this action, and others address ancillary issues like the preservation of evidence. The Court will address just the grievances relevant to exhaustion of Kornagay's claims against the FDOC defendants. Zabala and Noe do not raise an exhaustion defense, so the Court need not address the grievances relating the medical care.

Kornagay's first two grievances requested protection from Tabil. The first (510-2112-0494) described Tabil's threat regarding the lawsuit Kornagay settled with other FDOC officials, and the second (510-2201-0137) recounted how Tabil labeled him a snitch. Both grievances were approved and forwarded to investigators. Kornagay filed appeals because he wanted more prompt relief, but he did not need to for exhaustion purposes. On June 22, 2023, Kornagay filed a formal grievance of reprisal (2306-510-136) describing the attack, the alleged role of officials later identified as Cadiz-Baez and Coreff, and various threats made by Tabil. It was also approved for investigation. Because these three grievances were accepted, they were sufficient for exhaustion purposes. Kornagay thus exhausted administrative remedies as to his claims against Tabil and Cadiz-Baez.

Kornagay filed another informal grievance (510-2308-0172) on August 5, 2023. It blames the warden, assistant warden, colonel, and captain/OIC for failing to take protective measures despite knowledge of prior incidents of inmates escaping hand restraints and attacking others. While Kornagay did not mention the defendants by name, the titles suggest he was referring to Snider, Dawson, Scarpati, and Gahrmann. An official denied the informal grievance, and Kornagay followed up with a formal grievance. He did not receive a response, so he filed an appeal to the secretary's office. Thus,

9

Kornagay exhausted administrative remedies relating to his failure-to-protect claims against Snider, Dawson, Scarpati, and Gahrmann.

### B.    Pleading Sufficiency

#### 1. Retaliation

Kornagay claims Tabil retaliated against him for past litigation and grievances by labeling him a snitch, harassing him with threats of violence, and orchestrating the 2023 attack.

"[T]he First Amendment prohibits officials from retaliating against prisoners for exercising their right of free speech by filing lawsuits or grievances." *Mpaka v. Jackson Memorial Hospital*, 827 F. App'x 1007, 1010 (11th Cir. 2020). To succeed on a retaliation claim, a prisoner must prove three elements: "(1) his speech was constitutionally protected; (2) he suffered adverse action such that the official's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Id.* (quoting *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011)). "To establish causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008)).

Tabil makes two arguments attacking the pleading sufficiency of Kornagay's retaliation claim, but neither has merit. First, Tabil asserts Kornagay failed to establish that his speech was constitutionally protected because he did not describe the contents of the lawsuit that prompted Tabil's retaliation. Kornagay's complaint alleges that Tabil began his campaign of retaliation after learning Kornagay settled a lawsuit against other FDOC officers. That is enough detail. The Court can reasonably infer that the suit related to the conditions of Kornagay's confinement. The First Amendment protects Kornagay's right to challenge the conditions of his confinement in court.

Second, Tabil argues the lawsuit cannot be considered the motivating factor behind his statements labelling Kornagay as a snitch unless the suit pertained to other inmates and their contraband. That argument makes no sense and verges on bad faith. It would be absurd to dismiss a retaliation claim because the substance of the retaliatory threat did not match the substance of the underlying protected speech.

Kornagay sufficiently pled a First Amendment claim against Tabil.

### 2. Failure to Protect

The Eighth Amendment's "prohibition of cruel and unusual punishment requires prison officials to 'take reasonable measures to guarantee the safety of the inmates.'" *Cox v. Nobles*, 15 F.4th 1350, 1358 (11th Cir. 2021) (quoting

11

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  To succeed on a failure to protect claim, a plaintiff must show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the prison official was deliberately indifferent to the risk, and (3) the constitutional violation caused his injuries.  *Id.* at 1357-58.  Deliberate indifference is akin to subjective recklessness as used in criminal law.  To establish deliberate indifference, a plaintiff "must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024).  A defendant was not deliberately indifferent if he responded reasonably to the risk.  *Id.*

Kornagay asserts failure-to-protect claims against two groups of defendants.  First, he alleges Tabil and Cadiz-Baez orchestrated the 2023 attack by allowing the unnamed inmate to retrieve a shank from his cell, return to the dayroom, and stab Kornagay.  Tabil correctly argues that his verbal threats were not sufficient to state a claim under the Eighth Amendment.  *See Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) ("verbal abuse alone is insufficient to state a constitutional claim"). But there is no doubt that encouraging and enabling a violent attack by another inmate violates the Eighth Amendment.  Kornagay has stated a failure-to-protect claim against Tabil and Cadiz-Baez.

12

Kornagay claims Snider, Dawson, Scarpati, and Gahrmann were deliberately indifferent to the specific threat to Kornagay and the general threat posed by inmates escaping hand restraints. The factual allegations do not support a claim based on either risk. Kornagay states he informed these four defendants of threats to his safety in early 2022 and requested immediate protection. But it is not plausible that the defendants' denial of these requests led to the attack over a year later. Also, Kornagay does not allege any specific facts that would put the defendants on notice of a substantial general risk of an inmate escaping hand restraints and attacking Kornagay in June 2023. Thus, Kornagay has not plead a plausible failure-to-protect claim against Snider, Dawson, Scarpati, or Gahrmann.

### 3. Deliberate Indifference to Serious Medical Need

Kornagay claims Noe and Zabala provided inadequate medical care and covered up the severity of his injuries with inaccurate medical records.

The Supreme Court held in *Estelle v. Gamble* "that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." 429 U.S. 97, 104 (1976) (internal citation and quotation marks omitted). But not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "To establish a § 1983 claim for deliberate indifference, a plaintiff must show (1) a substantial risk of

13

serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (internal quotation marks and citation omitted). In the Eleventh Circuit, "[a] serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Shaw v. Allen*, 701 F. App'x 891, 893 (11th Cir. 2017) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

Deliberate indifference is akin to subjective recklessness as used in criminal law. To establish deliberate indifference, a plaintiff "must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024). A difference in medical opinion does not constitute deliberate indifference. *Hernandez v. Sec'y Fla. Dep't of Corr.*, 611 F. App'x 582, 584 (11th Cir. 2015). Nor does the exercise of medical judgment by a care provider. *Id.*

There is no doubt that the three stab wounds Kornagay suffered created a serious medical need. But Kornagay has not alleged that Zabala or Noe were deliberately indifferent to that need. Zabala and another nurse cleaned and bandaged Kornagay's wounds promptly after the attack and provided water to treat his reported dehydration. Zabala and Noe disagreed whether to send Kornagay to a hospital, but a "difference in medical opinion does not constitute

14

deliberate indifference." *Id.* And it is clear Noe's decision not to send Kornagay to a hospital was an exercise of his medical judgment—he thought it best for Kornagay to minimize movement until Noe could see him the next morning. Kornagay claims his pain went untreated that night because the triage room was out of pain medication, not because of Zabala or Noe's deliberate indifference.

The next morning, Noe treated Kornagay's pain with lidocaine injections, sutured his wounds, and prescribed pain medication. Kornagay continued to experience pain and headaches, and Zabala and Noe continued to treat him. When Kornagay complained the pain medications were ineffective, his providers provided alternatives. And when an orthopedist recommended physical therapy and additional medication, Kornagay received it.

In short, Kornagay's deliberate indifference claims against Noe and Zabala stem from his disagreement over the treatment he should have received and his dissatisfaction with the results. But Kornagay does not allege Noe or Zabala ignored him or ever failed to exercise medical judgment. Mere disagreement about the appropriate treatment cannot be the basis of an Eighth Amendment claim. *Id.* at 584 ("Any contentions about the type of medication or treatment [the plaintiff] received amounted to complaints about [the defendant's] exercise of medical judgment, which do not rise to the level of deliberate indifference."). And while Kornagay disagrees with some of the

15

notes in his medical records, he does not allege that those notes negatively impacted the care he received.   Kornagay has not stated a deliberate indifference claim against Noe or Zabala.

4.   42 U.S.C. § 1983 Conspiracy

Kornagay claims Noe, Zabala, and Gahrmann conspired to deprive him of adequate medical care and falsified records to cover it up.   To state a conspiracy claim under § 1983, Kornagay must allege three elements: "(1) a violation of his federal rights; (2) an agreement among the Defendants to violate such a right; and (3) an underlying actionable wrong." *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1148 (N.D. Ga. 2016) (cleaned up).   Kornagay fails to satisfy the first element.   For the reasons stated in the preceding section, he has not stated a plausible claim of deliberate indifference to serious medical need.   Without a plausible claim of an underlying denial of a constitutional right, the conspiracy claim cannot proceed.   *See Carruth v. Bentley*, 942 F.3d 1047, 1062 (11th Cir. 2019) ("to sustain a conspiracy action under § 1983 a plaintiff must show an underlying actual denial of its constitutional rights" (cleaned up)).

Kornagay also fails to adequately plead an agreement.   An "agreement may be inferred from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct[.]" *Am. Fed'n of Labor and Congress of Indus. Orgs. v. City of Miami, Fla.*, 637 F.3d 1178, 1192 (11th Cir.

16

2011). There can be no agreement for conspiracy purposes between Noe and Zabala because they are both employees of Centurion. "Under the intracorporate conspiracy doctrine, a corporation's employees cannot conspire among themselves when acting in the scope of their employment, as their actions are attributed to the corporation itself, 'thereby negating the multiplicity of actors necessary for the formation of a conspiracy.'" *Detris v. Coats*, 523 F. App'x 612, 615 (11th Cir. 2013) (quoting *Grider v. Cty. of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010)).

Gahrmann is not a Centurion employee, so Noe and Zabala could have conspired with him, but the complaint does not allege facts showing an agreement between them. A "mere allegation of an agreement, by itself, is conclusory." *Williams*, 181 F. Supp. 3d at 1148. Gahrmann's only involvement in the alleged conspiracy was his statement that the prison did not have the staff to take Kornagay to a hospital. But that was after Noe decided it was best for Kornagay to stay at the prison and minimize movement until Noe could treat him personally. The facts do not suggest Noe heard Gahrmann's comment or otherwise communicated with him before making treatment decisions. Kornagay has not stated a conspiracy claim.

## C.    Qualified Immunity

The only claims to survive 12(b)(6) review are the retaliation claim against Tabil and the failure-to-protect claims against Tabil and Cadiz-Baez.

17

They argue the doctrine of qualified immunity protects them from individual liability. "Qualified immunity protects government officials from individual liability unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Snorton v. Owens*, 808 F. App'x 814, 820 (11th Cir. 2020). An official invoking qualified immunity must first show he was acting within the scope of his discretionary authority. The burden then shifts to the plaintiff to show: (1) the official violated a federal statutory or constitutional right; and (2) the unlawfulness of the official's conduct was clearly established at the time of the alleged violation. *Id.* at 820-21.

"A federal right is 'clearly established' when 'at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing is unlawful.'" *Anderson v. Vazquez*, 813 F. App'x 358, 360 (11th Cir. 2020) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)). "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Wesby*, 132 S. Ct. at 589 (internal quotations omitted). To show that a legal principle is clearly established, a plaintiff must produce precedent "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

There is no doubt that the FDOC defendants were acting within the scope of their discretionary authority at all times relevant, so the burden shifts to Kornagay. As explained above, the complaint adequately alleges that Tabil and Cadiz-Baez violated his First and Eighth Amendment rights, so the question is whether the unlawfulness of their actions was clearly established at the time. It was. The Supreme Court and the Eleventh Circuit have long recognized that the "First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011). It is also well-established that "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). And the Eleventh Circuit has "held that a prison official violates the Eighth Amendment when he labels an inmate a snitch and exposes him to retaliation." *Bell v. Brown*, 747 F. App'x 809, 811 (11th Cir. 2018) (citing *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984)). These cases put Tabil and Cadiz-Baez on notice that their alleged conduct violated Kornagay's constitutional rights.

Accordingly, it is

**ORDERED:**

R. Zabala and G. Noe's Motion to Dismiss Complaint (Doc. 40) is **GRANTED** and Rami Tabil, Stephen Gahrmann, Jacob Dawson, Edgardo

19

Cadiz-Baez, Albert Scarpati, and Derek Snider's Motion to Dismiss Plaintiff's Complaint (Doc. 49) is **GRANTED in part and DENIED in part**.

1.      Kornagay's claims against Zabala, Noe, Gahrmann, Dawson, Scarpati, and Snider are **DISMISSED without prejudice**.  The Clerk is **DIRECTED** to terminate them as parties to this case.

2.      Tabil and Cadiz-Baez must file an answer within **14 days** of this Opinion and Order.

**DONE** and **ORDERED** in Fort Myers, Florida on February 6, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record

20