UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT D. KORNAGAY,

Plaintiff,

v. Case No. 2:24-cv-980-SPC-NPM

SERGEANT RAMI TABIL, et al.,

Defendants.

---

**OPINION AND ORDER**

Before the Court are ten pending motions in this civil rights case. Eight motions are by Plaintiff Robert D. Kornagay, *pro se*. He moves for leave to amend the complaint (*see* Docs. 65, 67, 68), to compel discovery (*see* Docs. 69, 70, 80, 82), for leave to depose incarcerated witnesses (Doc. 76), and for "Relief from Judgment." (Doc. 79). The other two motions are by Defendants Rami Tabil and Edgardo Cadiz-Baez[1], both asking for an extension of time to respond to outstanding discovery requests and to serve initial disclosures. (Docs. 72, 81). Kornagay opposes those motions. (Docs. 77, 82). He also asks for a hearing on his motions for leave to amend and his motions to compel discovery. (Doc. 80).

---

[1] Defendants Tabil and Cadiz-Baez are identified in the complaint, respectively, as "R. Tabil" and "Officer Bias." (*See* Doc. 31).

**Background**

Plaintiff is a Florida state prisoner at the Suwannee Correctional Institution in Live Oak, Florida. His claims arose at the Charlotte Correctional Institution (CCI) in Punta Gorda, Florida. He sued under 42 U.S.C. §§ 1983 and 1985, originally identifying twelve defendants. (See Doc. 1). Six were guards at CCI: Tabil, Cadiz-Baez, Shawn Corfee[2], Stephen Gahrmann, Albert Scarpati,[3] and a fictitiously identified "Major John Doe" ("Major Doe"). Two defendants were CCI prison administrators, Warden Derek Snider and Assistant Warden Jacob Dawson.[4] Two were healthcare providers at CCI, nurse "R. Zabala" and medical director "G. Noe." And two defendants were representatives of the Secretary of the Florida Department of Corrections (FDOC), "J. Adams" and "A. Johns." All were sued in their individual capacity.

The root of this action is Kornagay's claim that, starting in late 2021, Tabil repeatedly threatened him for filing prior lawsuits and had encouraged other inmates to attack him. Kornagay was eventually stabbed on June 18, 2023, by an unknown inmate in an attack allegedly orchestrated by Tabil, Cadiz-Baez, and Corfee. Kornagay alleges Snider, Dawson, Scarpati,

---

[2] Defendant Corfee is identified in the complaint as "Officer S. Coreff." (*See* Docs. 37, 65-1 at 5).

[3] Defendants Gahrmann and Scarpati are identified in the complaint, respectively, as "Captain Garmet," and "Colonel Scarpatty." (*See* Doc. 31).

[4] Defendants Snider and Dawson are identified in the complaint as "Warden D. Snider" and "Asst. Warden J. Dawson." (*See* Docs. 31 and 48).

Gahrmann, and Major Doe knew of the danger but were deliberately indifferent to it. Kornagay accuses Noe, Zabala, and Gahrmann of deliberate indifference to medical needs related to injuries he suffered in the stabbing. Kornagay's claims against Johns and Adams are based on their handling of administrative grievances.

Screening the complaint under 28 U.S.C. § 1915A, the Court dismissed Adams and Johns on March 17, 2025, holding Kornagay failed to state a claim against them. (Doc. 15). On June 2, 2025, Noe and Zabala also moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Doc. 40). On July 18, 2025, Tabil, Cadiz-Baez, Dawson, Snider, Gahrmann, and Scarpati followed with a like motion. (Doc. 49). On February 6, 2026, the Court ruled on those two motions, dismissing Zabala, Noe, Gahrmann, Scarpati, Snider, and Dawson, all without prejudice, but refusing to dismiss Tabil or Cadiz-Baez. (Doc. 58).

Tabil and Cadiz-Baez answered. (Doc. 63). Corfee and Major Doe have not been served, and the Court has not previously addressed the viability of claims against them. On March 16, 2026, the Court entered a Scheduling Order setting various deadlines, including for the completion of discovery by September 9, 2026, and for the filing of dispositive motions by October 21, 2026. (Doc. 64).

## Discussion

### 1. Kornagay's Motions for Leave to Amend and "Motion to Strike"

On April 13, 2026, Kornagay moved for leave to amend the complaint. (Doc. 65). That motion attaches a proposed amendment with five counts. (Doc. 65-1). On April 30, 2026, he filed a similar "Motion for Leave to Amend Complaint and Memorandum of Law." (Doc. 67). It included a 33-page attachment with another "Amended Complaint." (Doc. 67-2). However, on May 5, 2026, he filed a "Motion to strike his Second Motion for Leave to Amend his complaint." (Doc. 68). He explains he filed the second motion for leave under the mistaken understanding that the Court had not received his first such motion, and he now acknowledges the second one should be disregarded.

The Court construes Kornagay's motion to strike as seeking to withdraw his second motion for leave to amend, filed April 30, 2026. That motion to withdraw the second motion will be granted. That terminates the second motion for leave (Doc. 67), leaving only Kornagay's first motion for leave (Doc. 65) for consideration.

Amendments to pleadings are governed by Fed. R. Civ. P. 15. Prisoners are generally entitled to amend on the same terms as other litigants. *See Brown v. Johnson*, 387 F.3d 1344, 1349 (11th Cir. 2004). Unless amendment is permitted as a matter of course under Rule 15(a)(1), a party may amend its

pleading only with the opposing party's written consent or with leave of court. Fed. R. Civ. P. 15(a)(2).

The time to amend as a matter of course under Rule 15(a)(1) has passed, and defendants have not consented in writing to amendment. Therefore, leave of court is required. A court is to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, a court may deny leave if amendment would be futile. *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004). Amendment is futile where a proposed amendment would still be subject to dismissal. *Id.*

Further, although Kornagay paid the filing fee, his pleadings remain subject to screening because he is a prisoner seeking relief from government defendants. *See* 28 U.S.C. § 1915A(a). A district court has a duty to screen such a complaint and dismiss it in whole or in part if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915A(b). That screening obligation applies to amended complaints, *see Akins v. Velasquez*, No. 2:25-CV-346-SPC-NPM, 2026 WL 1113341, at *5 (M.D. Fla. Apr. 24, 2026), and proposed amendments when a prisoner seeks leave under Rule 15(a)(2). *See Simmons v. Kolodziej*, No. 3:23CV20567/LAC/ZCB, 2024 WL 5717477, at *1 (N.D. Fla. July 3, 2024). Review under § 1915A(b)(1) to determine whether a complaint states a claim applies the same standard as a

motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Christmas v. Nabors*, 76 F.4th 1320, 1328 (11th Cir. 2023). That is, well-pled factual allegations are taken as true, and reasonable inferences are drawn in favor of the plaintiff. *Id.*

Kornagay's original complaint is 25 pages and attaches 26 pages of exhibits. (Doc. 1). His proposed amended complaint is 20 pages and attaches eight pages of exhibits. (Doc. 65-1)[5]. Kornagay's motion for leave does not identify how the two differ in substance. At this point, there are only four defendants remaining from the original complaint: Tabil, Cadiz-Baez, Corfee, and Major Doe. Kornagay's proposed amended complaint, however, identifies eleven defendants, each sued in their individual capacity. It includes all named defendants from the original complaint *except* the FDOC representatives, Adams and Johns. Kornagay's proposed amendment would thus continue pursuit of claims against Tabil, Cadiz-Baez, and Corfee and seek to reinstate six named defendants previously dismissed: Noe, Zabala, Gahrmann, Scarpati, Snider, and Dawson.

Also, while the original complaint includes one fictitious defendant, Major Doe, the proposed amendment has two, "John Doe #1" ("Doe #1") and "John Doe #2" ("Doe #2"). Doe #1 is identified as a "Major" at the Charlotte

---

[5]Because Kornagay has withdrawn his "second" motion for leave to amend (*see* Doc. 68), the Court does not consider that "second" motion (Doc. 67) or any attachments to it, including its proposed amendment (Doc. 67-2).

Correctional Institution (Doc. 65-1 at 6), which he appears to correspond to the Major Doe Defendant in the original complaint. The Court will refer to this defendant as "Doe #1." Doe #2 is described as the unknown inmate who stabbed Kornagay on June 18, 2023. While the original complaint references that inmate and the stabbing, that pleading does not include him as a defendant. The Court now considers the viability of the claims in the proposed amended complaint against the various defendants. For the reasons below, the motion for leave to amend will be granted in part and denied in part.

**A. Claims Against Tabil, Cadiz-Baez, Corfee, and Doe #2**

Kornagay's claims and allegations against Tabil, Cadiz-Baez, and Corfee in the proposed amendment are mostly the same as in the original complaint. In both, Kornagay asserts those defendants violated his rights under the First and Eighth Amendments. He alleges they did so by repeated threats and harassment motivated by Kornagay's having filed and settled a prior lawsuit, filed grievances, and helped another inmate file a lawsuit. He says these defendants put him in danger by telling other inmates he was a "snitch" and was responsible for officials confiscating their contraband. He also claims these defendants orchestrated his stabbing by an unknown inmate.

The Court previously concluded such allegations in the original complaint state claims against Tabil and Cadiz-Baez. (Doc. 58 at 10–12). The Court concludes it is therefore proper to grant Kornagay leave to amend to

restate and/or clarify the basis of such claims. Kornagay does so primarily in Count 1 of the proposed amendment. (*See* Doc. 65-1 at 12–15, ¶¶ 3(A)–(T); *see also id.* at 7–9, ¶¶ 1, 2, 6). It is also appropriate to allow Kornagay to flesh out his related § 1983 conspiracy claims, which he does in Count 4, against not only Tabil, Cadiz-Baez, and Corfee but also Doe #2, the unknown inmate who allegedly stabbed him.[6] (*See id.* at 19–20, ¶¶ 6(A)–(F)). Other counts of the proposed amendment, however, present different questions because they would reinstate defendants and claims the Court has dismissed. The Court now turns to those.

### B. Failure-to-Protect Claims Against Snider, Dawson, Scarpati, Gahrmann, and Doe #1

Counts 3 and 5 of the proposed amendment would resurrect claims against Snider, Dawson, Scarpati, Gahrmann, and Doe #1 for failing to protect Kornagay from the stabbing attack, in violation of the Eighth Amendment. To succeed on a failure-to-protect claim, a plaintiff must plead and prove three elements: (1) that he was "incarcerated under conditions posing a substantial

[6] The amendment's claim against Doe #2 would be new, though it arises out of events alleged in the original complaint. As an inmate, Doe #2 would not normally be subject to liability under 42 U.S.C. § 1983, which requires that a defendant act "under color of law." *See Swindell v. Hunter*, No. 3:15-CV-1532-J-25JBT, 2019 WL 1297207, at *3 (M.D. Fla. Mar. 21, 2019). However, private defendants can be held liable under § 1983 if they conspire with state officials to deprive a plaintiff of constitutional rights. *Charles v. Johnson*, 18 F.4th 686, 696 (11th Cir. 2021). Kornagay alleges that Tabil, Cadiz-Baez, and Corfee, all CCI guards, conspired with Doe #2 to carry out the attack. (Doc. 65-1 at 19–20, ¶¶ 6(A), (B)). If true, that could permit § 1983 liability against Doe #2. *See McCormick v. Martin*, No. 23-CV-22526, 2023 WL 4531371, at *4 (S.D. Fla. July 13, 2023).

risk of serious harm," (2) that the "prison official [had] a sufficiently culpable state of mind," amounting to "deliberate indifference," and (3) "causation—that the constitutional violation caused [the plaintiff's] injuries." *Cox v. Nobles*, 15 F.4th 1350, 1357–58 (11th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). On the "deliberate indifference" element, the plaintiff must show both that the defendant "actually (subjectively) knew that the prisoner faced a substantial risk of serious harm and that the defendant disregarded that known risk by failing to respond to it in an (objectively) reasonable manner." *Id.* (quoting *Mosley v. Zachery*, 966 F.3d 165, 1270 (11th Cir. 2020)) (cleaned up). Showing negligence in failing to protect an inmate from attack is not enough. *Marbury v. Warden*, 936 F.3d 1227, 1238 (11th Cir. 2019) (per curiam) (*Marbury I*).

The original complaint included claims that Snider, Dawson, Scarpati, Gahrmann, and Doe #1 failed to protect Kornagay from being stabbed, based on two theories. (*See* Doc. 1 at 6, ¶¶ 5, 6; *id.* at 10–16, ¶¶ 11–41; *id.* at 21–22, ¶¶ 80–85). First, Kornagay asserted Snider, Dawson, Scarpati, and Gahrmann were indifferent to an individualized risk of harm because they knew of Kornagay's grievances and complaints that Tabil threatened him and told other inmates he was a "snitch." Second, Kornagay claimed that the same defendants plus Doe #1 were indifferent to a risk of harm to inmates generally based on such defendants' knowledge of prior attacks by inmates who escaped

their handcuffs by using paperclips, other kinds of "homemade handcuff keys," and "lubricants."

The Court dismissed all claims against Snider, Dawson, Scarpati, and Gahrmann without prejudice. (Doc. 58 at 11–13, 19–20)[7]. Addressing the "prior grievances" theory, the Court found that while Kornagay allegedly "informed these four defendants of threats to his safety in early 2022 and requested immediate protection," it was "not plausible that the denial of these requests led to the attack over a year later." (*Id.* at 13). The Court also dismissed the "prior incidents" claim because Kornagay failed to "allege any specific facts that would put the defendants on notice of a substantial general risk of an inmate escaping hand restraints and attacking [him] in June 2023." (*Id.*).

The proposed amendment contains failure-to-protect claims against the same defendants, with Count 5 tracking the "prior grievances" theory and Count 3 tracking the "prior incidents" theory. However, Count 5 "[tells] essentially the same story" as the original complaint, so the motion for leave will be denied as futile to the extent it would seek to revive claims based on the "prior grievances" theory. *See Crawford's Auto Ctr., Inc. v. State Farm Mut.*

---

[7] The Court's Opinion and Order (Doc. 58) addressed Rule 12(b)(6) motions filed by Tabil, Cadiz-Baez, Snider, Dawson, Scarpati, Gahrmann, Noe, and Zabala. (*See* Docs. 40, 49). It did not, however, address any claim against Doe #1 or Corfee, neither of whom had been served.

*Auto. Ins. Co.*, 945 F.3d 1150, 1163 (11th Cir. 2019). That is, Kornagay's allegations regarding his complaints about Tabil do not cure the deficiency the Court recognized previously, *i.e.*, that Kornagay's relevant complaints, made between January and March 2022, were too remote in time to his stabbing in June 2023. Nor has Kornagay now asserted any of these defendants knew that the particular inmate who stabbed Kornagay presented a substantial risk of harm to him. Indeed, Kornagay still cannot identify the inmate.

Count 3 of the proposed amendment would reinstate claims against Snider, Dawson, Scarpati, Gahrmann, and Doe #1 based on their failure to protect Kornagay from the stabbing despite knowledge of prior similar incidents. Unlike Count 5, Count 3 adds material not in the original complaint. First, Count 3 clarifies the risk by describing prior similar incidents in more detail. Kornagay claims inmates on close management who attend out-of-cell activities have escaped their handcuffs with improvised keys and attacked other inmates. Second Kornagay clarifies why the defendants' response to the risk was unreasonable. Count 3 specifically identifies the failure to use a "black box"–a hard plastic, rectangular device that fits over handcuffs and is designed to limit hand movements and prevent access to the handcuff's keyholes. *See Bilal v. Geo Care, LLC*, 981 F.3d 903, 909 n.4 (11th Cir. 2020); *Davis v. Wessel*, 792 F.3d 793, 796 (7th Cir. 2015) (showing a photo of a black box). Count 3 also adds that CCI had a stockpile of black boxes available, that

all other Florida state prisons with close management units use them, and that the defendants refused to do so. Third and finally, the original complaint avers the defendants had knowledge of prior similar incidents but did not allege any surrounding factual context, including the frequency of such incidents or when they occurred. Count 3 now references attached declarations from Kornagay and two other CCI inmates, Donald Schnarr and James Banberry, which describe prior incidents similar to the attack on Kornagay.[8]

Kornagay's declaration, for example, states he was first put in close management at CCI in 2019. (Doc. 65-1 at 25). Since then, he says, inmates escaping handcuffs and attacking each other has become so common that he and every inmate he knows have obtained homemade handcuff keys in case they get attacked. Kornagay claims he witnessed "countless" attacks by inmates who used homemade keys to get out of their cuffs between 2019 and 2023. He does not provide dates or other details of those incidents, but he asserts most resulted in serious injury and would be documented in prison records.

[8] Kornagay's proposed amendment also attaches declarations from other two CCI inmates, Cameron Holmes (Doc. 65-1 at 29) and Tyrece Fleming. (*Id*. at 30). However, their declarations state they arrived at CCI only after Kornagay was stabbed. As such, their allegations regarding practices and other incidents occurring afterwards are not probative of whether Kornagay's Eighth Amendment rights were infringed. *See Harrison v. Culliver*, 746 F.3d 1288, 1295 n.11 (11th Cir. 2014).

Schnarr similarly states it has "become a common thing for inmates to escape their cuffs." (Doc. 65-1 at 27). Schnarr further claims that, on February 2, 2023, about four months before Kornagay's stabbing, Schnarr was attacked under the same circumstances and in the same dormitory by an inmate who escaped his handcuffs and used a homemade knife. Schnarr states he complained to Snider about that attack and a filed grievance. In turn, Banberry states he was on close management at CCI between February and August 2021 and witnessed "inmates slipping out of their handcuffs and stabbing or fighting other inmates" on "multiple occasions," and he says it was "common" and "a constant thing." He also recounts Gahrmann and Scarpati making statements indicating their awareness that it happened frequently.[9]

As discussed, the proposed amendment still would not support a failure-to-protect claim based on these defendants' deliberate indifference to an individualized risk to Kornagay in June 2023. However, a plaintiff can establish a failure-to-protect claim based on deliberate indifference to a substantial risk of more "generalized inmate-on-inmate violence." *See Marbury v. Warden III*, No. 24-13513, ___ F.4th ___, ___, 2026 WL 1958923,

[9] Specifically, Banberry alleges that, after one incident, he heard Gahrmann say to another officer, "Let me guess, someone else slipped out of their handcuffs." (Doc. 65-1 at 31). Banberry also claims he once used a homemade handcuff key to get out of his own cuffs when he got into a fight with a trustee, and Scarpati told him afterwards, "I'm not mad at you. I guess you would be a fool to sit there while someone else is coming out of their cuffs." (*Id.*) (cleaned up).

*1–2 (11th Cir. July 7, 2026) (*Marbury III*); *see also Marbury I,* 936 F.3d at 1234–35; *Marbury v. Warden*, No. 22-10916, 2022 WL 17175549, at *2 (11th Cir. Nov. 23, 2022) (*Marbury II*). A plaintiff pursuing a claim based on a generalized risk must plead and prove that inmate-on-inmate violence is "the norm or something close to it," such as "confinement in a prison where violence and terror reign." *Marbury III*, 2026 WL 1958923, *5 (quoting *Marbury I*, 936 F.3d at 1234 (quoting, in turn, *Purcell ex rel. Estate of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1320, 1322 (11th Cir. 2005))). "Neither a generalized awareness of risk nor the mere presence of occasional, isolated attacks by one prisoner on another will suffice." *Id.* (internal quotation marks and citation omitted).

At the pleading stage, Kornagay has not had the benefit of discovery, nor would he otherwise have access to prison records of prior attacks. The factual allegations of his pleading must be taken as true, with reasonable inferences drawn in his favor. So construed, the proposed amendment might support the existence of a substantial risk of serious harm from inmate-on-inmate assaults, despite the use of handcuffs. *See Oliver v. Harden*, No. 3:11-CV-964-J-37MCR, 2012 WL 3290270, at *5 (M.D. Fla. Aug. 13, 2012) (plaintiff stated a claim that defendants were on notice of the need to monitor inmates and of "inadequate restraints being used on the inmates allowing them to slip their restraints"); *see also Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1583 (11th Cir. 1995) (holding that "evidence that inmate-on-inmate violence occurred regularly when the jail

was overcrowded" and "was severe enough to require medical attention and even hospitalization on occasion" was sufficient to show a substantial risk of serious harm); *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1027–28, 1034 (11th Cir. 2001) (en banc) (allegations that jail facility allowed prisoners ready access to weapons, failed to allow for lock down of inmates, and failed to allow for surveillance of inmates were sufficient to show a substantial risk of serious harm, even absent a record of inmate assaults with serious injuries), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Kornagay's allegations, taken as true, might also establish deliberate indifference. If a plaintiff can show "that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it," then such could support that "the defendant-official had actual knowledge of the risk." *Farmer*, 511 U.S. at 842–43 (cleaned up). Kornagay claims prior incidents in which close management inmates picked the locks on their handcuffs and attacked other inmates were widespread, documented, and thus known to these defendants. He further alleges these defendants failed to utilize black box restraints despite their availability at CCI and their broad use on close management prisoners at other Florida state

prisons.[10] Because it is not clear it would be futile to amend to assert the claims in Count 3 against Gahrmann, Scarpati, Dawson, Snider, and Doe #1, the Court will allow Kornagay to do so.

### C. Claims that Noe and Zabala were Deliberately Indifferent to Medical Needs

Finally, Count 2 of the proposed amendment claims that Noe and Zabala were deliberately indifferent to Kornagay's serious medical needs after the stabbing, in violation of the Eighth Amendment. (Doc. 65-1 at 15–17). The original complaint contains numerous similar allegations. The Court held them insufficient to state claims against Noe or Zabala because they failed to show deliberate indifference to Kornagay's serious medical needs. Count 2 of the proposed amendment not materially different and still fails to state a claim against these defendants. Therefore, to the Court denies Kornagay's request to reinstate claims against Noe and Zabala.[11]

---

[10] Many cases acknowledge the use of black box devices in Florida and elsewhere. *See, e.g.*, *Bilal*, 981 F.3d at 909 & n.4; *Pierre v. Padgett*, 808 F. App'x 838, 840 (11th Cir. 2020); *Wean v. Budz*, 589 F. App'x 488, 489–90 (11th Cir. 2014); *Moody v. Proctor*, 986 F.2d 239, 241 (8th Cir. 1993); *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021); *Walker v. Williamson*, No. 3:15CV179/LAC/EMT, 2017 WL 4768079, at *11 (N.D. Fla. Oct. 3, 2017); *Gross v. White*, No. 8:05-CV-1767-27TBM, 2008 WL 2795805, at *3 & n.1 (M.D. Fla. July 18, 2008).

[11] Kornagay has filed a motion that includes a request for a hearing on his motion for leave to amend the complaint. (Doc. 80). That motion will be denied.

**2. "Motion for Relief from Judgment or Order"**

On June 29, 2026, Kornagay filed what he styled as a "Motion for Relief from Judgment or Order" under Fed. R. Civ. P. 60(b)(3). (Doc. 79). Rule 60(b) authorizes a court to relieve a party from a "final judgment, order or proceeding" for certain reasons, including "fraud …, misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). In his motion, Kornagay alleges that, to sabotage his case, one or more unknown prison officials intercepted his proposed amended complaint when he tried to file it in October 2025 as part of his response to the motions to dismiss filed by Noe, Zabala, Gahrmann, Scarpati, Snider, and Dawson. He argues the Court should thus allow him to proceed on his proposed amended complaint, which he contends states claims against all the defendants the Court dismissed on February 6, 2026. However, even if Kornagay sought to file an amended complaint in September 2025, he still would have required leave of court under Fed. R. Civ. P. 15(a). The Court addressed the substance of Kornagay's proposed amended complaint in the preceding section and will allow amendment to the extent it is not futile. Therefore, Kornagay's instant motion for "relief from judgment," which effectively just asks for reconsideration of the order dismissing Noe, Zabala, Gahrmann, Scarpati, Snider, and Dawson in light of the proposed amended complaint, is moot.

### 3. Discovery Motions

#### A. Outstanding Discovery

On June 1, 2026, Kornagay moved to compel Defendants Tabil and Cadiz-Baez to respond to interrogatories, requests for admission, and requests for production, and to serve initial disclosures. (Doc. 69). In support, Kornagay alleges he served interrogatories to each of those defendants and a request for production of documents on April 6, 2026, and that he served requests for admission to Tabil on April 9, 2026. (*See* Doc. 70-1). Kornagay also notes the Court lifted the exemption on initial disclosures, *see* Fed. R. Civ. P. 26(a)(1)(B)(iv), on March 16, 2026. (Doc. 64). In his motion, Kornagay maintains that Tabil and Cadiz-Baez's initial disclosures and their discovery responses are all overdue. Kornagay also asks for sanctions.

On June 3, 2026, Tabil and Cadiz-Baez moved for an extension of time to respond to the discovery requests and serve initial disclosures. (Doc. 72). They acknowledge their failure to timely provide the discovery but claim excusable neglect. Kornagay filed an opposition. (Doc. 77). He also filed a motion for a hearing on his motion to compel. (Doc. 80).

On July 20, 2026, Tabil and Cadiz-Baez filed a motion stating they had served responses to the requests for production on July 9, 2026. (Doc. 81). They again asked for additional time, this time until August 19, 2026, to provide additional documents, respond to the interrogatories and requests for

admission, and serve initial disclosures. On July 28, 2026, Kornagay filed what he styles as an "Amended Motion to Compel Discovery." (Doc. 82). In substance, it is a reply in support of his motion to compel and in opposition to Tabil and Cadiz-Baez's motions for additional time.

Responses to interrogatories, requests for production, and requests for admission are due 30 days after service unless the court orders a longer time. *See* Rules 33(b)(2), 34(b)(2)(A), and 36(a)(3), Fed. R. Civ. P. A party may file a motion to compel if an adverse party fails to make initial disclosures or fails to respond to interrogatories or requests for production. *See* Fed. R. Civ. P. 37(a)(3). A failure to timely respond to requests for admission renders the matters admitted unless the court allows a longer time to respond. *See* Fed. R. Civ. P. 36(a)(3); *see also* Fed. R. Civ. P. 36(b) (addressing withdrawal or amendment of an admission).

District courts have broad discretion in managing their cases. *Chrysler Int'l Corp. v. Chenaly*, 280 F.3d 1358, 1360 (11th Cir. 2002). Such discretion includes management of pretrial activities such as discovery and scheduling. *Id.* There is a long-standing preference in federal courts that litigation disputes be resolved on their merits rather than through sanctions that deprive a party of its day in court. *See Smith v. First Nat. Bank of Atlanta*, 837 F.2d 1575, 1577–78 (11th Cir. 1988); *Florida Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993). District courts may permit out-of-time responses to

requests for admission where the presentation of the merits will not be subverted, and the opposing party will not suffer unfair prejudice. *Smith*, 837 F.3d at 1577. District courts likewise have discretion to extend the time to provide initial disclosures and responses to interrogatories and requests for production where the opposing party will not suffer unfair prejudice. *See, e.g., Elof Hansson Paper & Bd., Inc. v. Caldera*, No. 11-20495-CIV, 2011 WL 2174042, at *4 (S.D. Fla. June 2, 2011).

Tabil and Cadiz-Baez concede their failure to serve either initial disclosures or responses to Kornagay's discovery requests. However, they have already produced documents in response to Kornagay's requests for production, and they claim they will be producing more. Tabil and Cadiz-Baez also contend Kornagay's discovery requests require "a large amount of material [to] be reviewed," and that their failure to timely provide discovery is the result of "excusable neglect." Tabil and Cadiz-Baez also insist that Kornagay will suffer no unfair prejudice by allowing them until August 19, 2026, to provide the discovery he seeks. The Court agrees. The only prejudice Kornagay identifies is that these defendants could possibly identify Doe #2 or other inmate witnesses who might be released from prison and thus be more difficult to locate for purposes of service. However, such prejudice is entirely speculative and hypothetical at this time.

Because of the lack of demonstrated prejudice and the Court's preference to decide the case on the merits, the Court will grant Tabil and Cadiz-Baez's second motion for an extension of time (Doc. 81). Accordingly, they shall serve initial disclosures and responses to all outstanding discovery by August 19, 2026. Their first such motion (Doc. 72) is therefore moot. To the extent Kornagay's motions to compel (Docs. 69, 72) seek relief beyond that, they are denied, as are his requests for sanctions and a hearing.

**B. Motion for Leave to Depose Incarcerated Witnesses**

On June 18, 2026, Kornagay moved for leave to take the "written deposition" of five incarcerated persons: (1) Errick Holmes, Jr., DC# M82914; (2) Kevin Henley, DC# X28105; (3) LaQuann Bridges, DC# T68637; (4) Walter Johnson, DC# J32975; and (5) Tyrece S. Flemings, DC# 383708. (Doc. 76). The Court construes the motion as seeking leave to take depositions by written questions pursuant to Fed. R. Civ. P. 31. Kornagay further requests the Court adopt procedures he says were used in another case he litigated, *Kornagay v. Burt*, 3:09-cv-281-LC-EMT (N.D. Fla.) ("*Burt*").

A party desiring to take a deposition by written questions of a person confined in prison must obtain leave of court. Fed. R. Civ. P. 31(a)(2)(B). It is not clear whether or to what extent Kornagay's designated witnesses might truly have discoverable information. However, no defendant opposes

Kornagay's motion. The Court will therefore grant leave to take the depositions by written questions.

Kornagay further asks this Court to adopt procedures he claims were employed in *Burt*. Kornagay does not provide a copy of any court order adopting procedures for depositions in *Burt*, nor does he cite any specific document in that case. Despite that, upon reviewing the docket sheet in *Burt*, this Court has located an order adopting a procedure approved in *Flanagan v. Shipman*, No. 3:08-cv-204-RV-WCS (N.D. Fla. Mar. 3, 2010) ("*Flanagan*") (*see Burt*, Doc. 91 (N.D. Fla. Aug. 20, 2010)). (*Burt*, Doc. 91-1). Under that order, the plaintiff was to submit a list of written deposition questions to the assistant general counsel for the FDOC ("FDOC Counsel") within 25 days of the entry of the order. FDOC Counsel had 14 days to determine the locations of the confined deponents and forward the questions to the appropriate litigation coordinator at the relevant institution. The litigation coordinator would then have to promptly take the sworn testimony of the inmate witness and return their response to the FDOC Counsel, who would then forward the response to the plaintiff within 30 days.

While courts sometimes suggest that depositions by written questions are a superior alternative to those by oral questioning in *pro se* prisoner litigation, in reality, the requirements and costs of depositions by written questions make them "nearly as difficult to obtain." *Brown v. Phillips*, No. CV

16-2566, 2018 WL 11573575, at *1 (E.D. Pa. Dec. 19, 2018); *see also Lopez v. Horel*, C 06–4772 SI PR, 2007 WL 2177460 (N.D. Cal. July 27, 2007), *aff'd*, 367 F. App'x 810 (9th Cir. 2010); *Oliver*, 2026 WL 474863, at *1 ("Considering the financial and procedural impediments …, the Court is skeptical whether, as a practical matter, Plaintiff will be able to obtain the deposition by written questions."). In this vein, the *Flanagan/Burt* procedure does not account for important requirements for depositions by written questions.

First, a party conducting a deposition by written questions must serve all other parties with a notice that includes a copy of written questions for direct examination. Fed. R. Civ. P. 31(a)(5). Other parties then have 14 days to serve their own written questions for cross-examination; the party noticing the deposition has seven days to serve any additional written questions for redirect; and the other parties have seven days to serve written questions for re-cross. *Id.* The party noticing the deposition must then deliver a copy of the deposition notice and all questions from all parties to the officer taking the deposition. Fed. R. Civ. P. 31(b). The *Flanagan/Burch* procedure, however, does not give other parties an opportunity to present written questions, as required by the Rule. *See Fortner v. Balkcom*, 380 F.2d 816, 821 & n.1 (5th

Cir. 1967)[12], *disapproved on other grounds by Harris v. Nelson*, 394 U.S. 286 (1969).

Second, the *Flanagan*/*Burch* procedures would seem to place the burden on the FDOC, through its counsel or the litigation coordinators at the institutions, to arrange the depositions and to obtain (and apparently pay for) an officer to take each deposition, prepare and certify the transcript, and send a copy to Kornagay. However, as the party noticing the depositions, it is Kornagay, not the FDOC, the defendants, their attorneys, or this Court, that is ultimately obligated to arrange and pay for the depositions. That is, Kornagay must notice the depositions and hire and designate an officer qualified to take them. *See* Fed. R. Civ. P. 31(a)(3), (b); Fed. R. Civ. P. 28(a. Further, unlike in *Burt*, Kornagay has neither sought nor been granted leave to proceed *in forma pauperis* in this case. But even if Kornagay had such status, neither it nor his incarceration would relieve him from responsibility for the financial costs of the depositions, including recording and transcribing them. *See Macker v. Naylor*, No. 6:23-CV-1963-JSS-DCI, 2025 WL 1158698, at *1 (M.D. Fla. Apr. 21, 2025).

---

[12] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Because the *Flanagan/Burt* procedure Kornagay proposes does not account for all requirements of depositions by written questions, the Court declines to adopt it. Kornagay is granted leave to conduct the depositions by written questions, but he must comply with all applicable statutes and court rules, including Fed. R. Civ. P. 31. All parties and counsel must confer and coordinate dates and other deposition logistics in good faith.

Accordingly, it is now

**ORDERED:**

For the reasons explained below:

(1) Plaintiff Robert Kornagay's first motion for leave to amend (Doc. 65) is **GRANTED IN PART AND DENIED IN PART**. Kornagay may amend to clarify the basis of his claims against Defendants Rami Tabil, Edgardo Cadiz-Baez, and Shawn Corfee; to add a related claim against "John Doe #2; and to add Count 3 of the proposed amended complaint. The motion for leave is otherwise **DENIED**.

(2) Plaintiff shall file an amended complaint, consistent with the above leave, on or before **September 10, 2026**.

(3) Kornagay's construed motion to withdraw his second motion for leave to amend (Doc. 68) is **GRANTED**,and Kornagay's second motion for leave (Doc. 67) is **DENIED**.

(4) Kornagay's motion for relief from judgment (Doc. 79) is **DENIED AS MOOT**.

(5) Kornagay's motion for leave to depose incarcerated witnesses (Doc. 76) is **GRANTED IN PART AND DENIED IN PART**. Kornagay may conduct depositions by written questions of the five listed incarcerated persons. The motion is otherwise **DENIED**.

(6) Defendants Tabil and Cadiz-Baez's second motion for an extension of time to serve initial disclosures and responses to outstanding discovery (Doc. 71) is **GRANTED**. They must serve initial disclosures and respond to all outstanding discovery requests by **on or before August 27, 2026**.

(7) Defendants Tabil and Cadiz-Baez's first request for an extension of time to provide discovery (Doc. 69) is **DENIED AS MOOT**.

(8) Kornagay's motions to compel (Docs. 69, 82) are **DENIED**, except as ordered above.

(9) Kornagay's motion for a hearing (Doc. 80) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on August 20, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-3
Copies: All Counsel and Parties of Record